SHEPHERD, Senior Judge,
concurring in result.
I concur in the result in this case. I write only to rail once again, as I have on more than one prior occasion — most recently, in Housing Opportunities Project, etc. et al, v. SPV Realty, LC, 42 Fla. L. Weekly D44a (Fla. 3d DCA Dec. 21, 2016) — that this Court should seriously consider the constitutional implications of blindly adhering to the mantra so regularly incanted by the Court to support, uphold, or approve agency decision-making that “an agency’s interpretation of a statute, with which it is entitled with administering shall be accorded great weight and should not be overturned unless clearly erroneous, arbitrary, or unreasonable,”[1] as well as the many variations on the theme.
As Justice Thomas recently explained in the context of federal legislation where the same legal line is often reflexively, I would say mindlessly, invoked to approve agency interpretation of congressional legislation, Chevron deference “wrests from Courts the ultimate interpretative authority to ‘say what the law is,’ Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)[2], and hands it over to the Executive.” Michigan v. E.P.A., — U.S. -, 135 S.Ct. 2699, 2712, 192 L.Ed.2d 674 *1257 (2015) (Thomas, J., concurring);[3] cf. Bush v. Schiavo, 885 So.2d 321, 330 (Fla. 2004) (“Under the express separation of powers provision in our state constitution, ‘the judiciary is a coequal branch of the Florida government vested with the sole authority to exercise the judicial power[.]”’); Fla. Code of Jud. Conduct, Canon 1 (“A Judge Shall Uphold the Integrity and Independence of the Judiciary.”).
Perhaps even more profound, is the due process problem of automatically taking the side of one of the parties in the case. As one percipient scholar has explained:
It ordinarily would be outrageous for a judge in a case to defer to the views of one of the parties. And it ordinarily would be inconceivable for judges to do this regularly by announcing ahead of time a rule under which judges should defer to the interpretation of one of the parties in their cases, let alone the most powerful of parties, the government. Nonetheless, this is what the judges have done. It therefore is necessary to confront the reality that when judges defer to the executive’s view of the law, they display systematic bias toward one of the parties.
Hamburger, supra note 2, at 1212; see also Fla. Code of Jud. Conduct, Canon 3 (“A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.”).
In my view, deference to an agency’s construction or application of a statute implicates important due process and separation of powers questions deserving of serious contemplation by future members of this and other courts around the state. The fundamental concern of keeping the individual branches separate is that the fusion of the powers of any two branches into the same department would ultimately result in the destruction of liberty. E.g., Ponder v. Graham, 4 Fla. 23, 42-43 (1851); The Federalist Nos. 47, 51 (James Madison). We should be reluctant to so readily abandon our judicial independence and alter the structure upon which our entire system of government is based. Moreover, we should not be so quick to embrace a course of conduct that results in systemic bias towards one of the parties. While I recognize the reality of agency deference, I share Justice Thomas’s concern that “we seem to be straying further and further *1258 from the Constitution without so much as pausing to ask why. We should stop and consider that document before blithely giving the force of law to any other agency ‘interpretations!)]’ ” Michigan, 135 S.Ct. at 2713.

. Majority op. at 1255-56.

2. See Cass R. Sunstein, Chevron Step Zero, 92 Va. L. Rev. 187, 188-89 (2006) (“Ironically, Justice Stevens, the author of Chevron, had no broad ambitions for the decision; the Court did not mean to do anything dramatic. But shortly after it appeared, Chevron was quickly taken to establish a new approach to judicial review of agency interpretations of law, going so far as to create a kind of counter-Marbury for the administrative state. Chevron seemed to declare that in the face of ambiguity, it is emphatically the province and duty of the administrative department to say what the law is.” (footnotes omitted)).

. See also Antonin Scalia, Judicial Deference to Administrative Interpretations of Law, 1989 Duke LJ. 511, 513-14 (1989):
It is not immediately apparent why a court should ever accept the judgment of an executive agency on a question of law. Indeed, on its face the suggestion seems quite incompatible with Marshall’s aphorism that "[i]t is emphatically the province and duty of the judicial department to say what the law is.” Surely the law, that immutable product of Congress, is what it is, and its content — ultimately to be decided by the courts — cannot be altered or affected by what the Executive thinks about- it. I suppose it is harmless enough to speak about "giving deference to the views of the Executive” concerning the meaning of a statute, just as we speak of "giving deference to the views of the Congress" concerning the constitutionality of particular legislation — the mealymouthed word “deference” not necessarily meaning anything more than considering those views with attentiveness and profound respect, before we reject them. But to say that those views, if at least reasonable, will ever be binding — that is, seemingly, a striking abdication of judicial responsibility.
(footnote omitted). Justice Scalia ultimately concludes, however, that agency deference is theoretically justified as a function of Congress's intent to confer discretion upon the agency. Id. at 516. But see Philip Hamburger, Chevron Bias, 84 Geo. Wash. L. Rev. 1187, 1196 n.28 (2016) (“Certainly, it often is said that Congress delegates judicial power to agencies, but this cannot be delegation, for the Constitution places the judicial power in the courts, and Congress cannot subdelegate a power it does not have. U.S, Const. Art. Ill, § 1.”).